UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOE HAND PROMOTIONS, INC.                    CIVIL ACTION


VERSUS                                       NO: 13-4747


TOMMY ASHBY, SR., TOMMY ASHBY,               SECTION: R
JR., MARK ASHBY, AND WHEREHOUSE
BAR AND GRILL

## ORDER AND REASONS

Plaintiff Joe Hand Promotions, Inc. moves the Court for a default judgment.[1] For the following reasons, the Court GRANTS plaintiff's motion in part.


## I.   BACKGROUND

Plaintiff filed this lawsuit on June 7, 2013, alleging that defendants Tommy Ashby, Sr., Tommy Ashby, Jr., Mark Ashby, and Wherehouse Bar and Grill violated 47 U.S.C. §§ 553 and 605 by intercepting a pay-per-view UFC broadcast and displaying it at Wherehouse without Joe Hand's authorization.[2] According to the complaint, Joe Hand had the exclusive right to distribute the "UFC 125: Resolution Broadcast, including all undercard bouts and the entire television broadcast, scheduled for January 1, 2011 . . . via closed circuit television and via encrypted satellite signal."[3] Plaintiff then contracted with various "commercial customers (*i.e.*, casinos, racetracks, bars, restaurants, and

---

[1]     R. Doc. 14.

[2]     R. Doc. 1.

[3]     *Id.* at 3; *see also* R. Doc. 14-3; R. Doc. 14-8 at 1-2.

nightclubs)" to allow them to exhibit the broadcast to their patrons.[4] Rather than pay Joe Hand for the rights to exhibit the broadcast, however, defendants illegally intercepted it and displayed it to the customers of the Wherehouse Bar & Grill.[5] Joe Hand learned of this activity through one of its auditors, Robin Campbell, who entered the establishment on January 1, 2011, and observed the broadcast being unlawfully displayed.[6] In her affidavit, Campbell averred that Wherehouse has a capacity of approximately 250 people, and that there were approximately 80 people in the establishment on the night of the broadcast.[7] The commercial sub-license fee that Joe Hand would charge a business with a capacity of 250 to broadcast UFC events is $1600.[8]

Plaintiff alleges that defendants' conduct violated both 47 U.S.C. § 553, which makes it unlawful to "intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator," and 47 U.S.C. § 605, which makes it unlawful for any "person not being authorized by the sender [to] intercept any radio communication."[9] The complaint also includes a claim for

---

[4]      R. Doc. 1 at 4; *see also* R. Doc. 14-8 at 2.

[5]      R. Doc. 1 at 4.

[6]      *See* R. Doc. 14-5.

[7]      *Id.* at 2.

[8]      R. Doc. 14-4.

[9]      R. Doc. 1 at 5-6.

conversion under state law.[10] Plaintiff seeks $60,000 in damages

under section 605, as well as costs and attorneys' fees.[11]

On January 21, 2014, plaintiff requested that a default be

entered against defendants Tommy Ashby, Jr., Mark Ashby, and

Wherehouse Bar & Grill.[12] The Clerk of Court entered an order of

default as to those defendants on January 22, 2014.[13] The parties

have since stipulated to the dismissal of Tommy Ashby, Jr. and

Wherehouse Bar and Grill.[14] Thus, plaintiff's motion for default

judgment against those two defendants is now moot. The Court

proceeds to consider the motion for a default judgment against

Mark Ashby.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b), the court may

enter a default against a party if it fails to plead or otherwise

respond to the plaintiff's complaint within the required time

period. A plaintiff who seeks a default judgment must first

petition the court for the entry of default and show "by

affidavit or otherwise" that the defendant "has failed to plead

or otherwise defend." Fed. R. Civ. P. 55(a). Once default has

---

[10]    *Id.* at 7.

[11]    *See* R. Doc. 14-1 at 11; R. Doc. 14-6 at 2.

[12]    R. Doc. 11.

[13]    R. Doc. 13.

[14]    R. Docs. 27, 29.

been entered, the plaintiff's well-pleaded factual allegations are deemed admitted. *Meyer v. Bayles*, No. 13-30907, --- F. App'x ----, 2014 WL 943858, at \*1 (5th Cir. Mar. 12, 2014) (citing *Nishimatsu Const. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). At the same time, the defaulting defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206; *accord Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007); *Gines v. D.R. Horton, Inc.*, 867 F. Supp. 2d 824, 829 (M.D. La. 2012).

After the defendant's default has been entered, the plaintiff may request the entry of judgment on the default. If the plaintiff's claim is for a sum certain, and the defendant has not made an appearance in court, the request for a default judgment may be directed to the clerk. Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). No party is entitled to a default judgment as a matter of right. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)).

## III. DISCUSSION

### A.   Jurisdiction and Venue

Before entering judgment, the Court must "look into its jurisdiction both over the subject matter and the parties." *Sys.*

*Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324
(5th Cir. 2001). Judgment entered in the absence of jurisdiction
is void, and the Court must therefore refrain from entering
judgment if its jurisdiction is uncertain.

The Court has subject matter jurisdiction over this lawsuit
because plaintiff has made claims under two federal statutes, 47
U.S.C. § 553 and 47 U.S.C. § 605. *See* 28 U.S.C. § 1331 ("The
district courts shall have original jurisdiction of all civil
actions arising under the Constitution, laws, or treaties of the
United States."). The Court has supplemental jurisdiction over
plaintiff's state-law claim for conversion. *See* 28 U.S.C. § 1367.

So, too, is there personal jurisdiction over defendants. A
court has personal jurisdiction over a defendant if (1) the forum
state's long-arm statute confers personal jurisdiction over the
defendant, and (2) the forum state's exercise of jurisdiction
complies with due process. *Latshaw v. Johnson*, 167 F.3d 208, 211
(5th Cir. 1999). Because Louisiana's long-arm statute, La. Rev.
Stat. § 13:3201, *et seq.*, extends jurisdiction to the full limits
of due process, the Court's focus is solely on whether the
exercise of jurisdiction in the case satisfies federal due
process requirements. *Dickson Marine Inc. v. Panalpina, Inc.*, 179
F.3d 331, 336 (5th Cir. 1999). According to the complaint,
defendants reside in the state of Louisiana and caused injury to
plaintiff in that state by intercepting and displaying the
broadcast owned by plaintiff at their Louisiana bar. Defendants

5

clearly have sufficient minimum contacts with Louisiana such that they are subject to the jurisdiction of this Court. *See J&J Sports Prods., Inc. v. After Six Prods., Inc.*, Action No. 3:13-CV-591, 2014 WL 644400, at *3 (E.D. Va. Feb. 19, 2014) (finding personal jurisdiction over defendants on similar facts); *J&J Sports Prods., Inc. v. Wing Bistro LLC*, Action No. 4:13cv31, 2013 WL 6834645, at *2 (E.D. Va. Dec. 19, 2013) (same).

The Court is also satisfied that venue is proper in this district. Defendants are residents of Louisiana, and all of the events giving rise to this claim occurred in Louisiana. *See* 28 U.S.C. § 1391(b) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] a judicial district in which a substantial part of the events . . . giving rise to the claim occurred . . . ."); *cf. After Six Prods.*, 2014 WL 644400, at *3; *Wing Bistro*, 2013 WL 6834645, at *4.

## B.   Entry of Default Judgment

The Court now turns to whether a default judgment should be entered against Mark Ashby. The record reflects that Ashby was served with process on December 13, 2013 but has failed to plead or otherwise defend against plaintiff's claims.[15] Although judgments by default are generally disfavored, *see Lindsey v.*

---

[15]    R. Doc. 7.

*Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998), the Court finds

that defendant's failure to appear impedes the "just, speedy, and

inexpensive disposition" of this case on the merits. *Sun Bank of*

*Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th

Cir. 1989). Moreover, the record does not reveal any excuse for

Ashby's failure to appear. Thus, the Court will determine whether

the facts alleged in the complaint, taken as true, constitute a

legitimate cause of action, and if they do, the Court will enter

a default judgment in favor of the plaintiff.

Sections 553(a) and 605(a) both make it unlawful for any

entity to intercept and display cable programming without proper

authorization. *See* 47 U.S.C. § 553(a)(1) ("No person shall

intercept or receive . . . any communications service offered

over a cable system, unless specifically authorized to do so by a

cable operator."); 47 U.S.C. § 605(a) ("No person not being

authorized by the sender shall intercept any radio communication

and divulge or publish the existence, contents, substance,

purport, effect, or meaning of such intercepted communication to

any person."). "[W]hen a television program is transmitted or

intercepted over both cable and satellite mediums, both sections

553 and 605 apply." *Joe Hand Promotions, Inc. v. Trenchard*, No.

3:12cv1099, 2014 WL 854537, at *2 (D. Conn. Mar. 3, 2014) (citing

*Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 130 (2d Cir.

1996)). Joe Hand alleges that Ashby, without authorization from

Joe Hand, intercepted and displayed the UFC broadcast, which

"originated via satellite uplink, and was subsequently
retransmitted to cable systems and satellite companies via
satellite signal."[16] Accordingly, plaintiff has stated a cause of
action under both sections. *See id; Wing Bistro*, 2013 WL 6834645,
at *5 ("The act of intercepting cable and/or satellite
communications and broadcasting that signal to . . . patrons
without a license is a violation of both § 553 and § 605."); *Joe
Hand Promotions, Inc. v. Bonvillain*, Civil Action No. 13-4912,
2013 WL 5935208, at *1 (E.D. La. Nov. 5, 2013).

　　　Turning to plaintiff's conversion allegation, the Court
finds that plaintiff has stated a claim for conversion under
Louisiana law. The Louisiana Supreme Court has explained that the
tort of conversion

> is grounded on the unlawful interference with the
> ownership or possession of a movable . . . . A conversion
> is committed when any of the following occurs: 1)
> possession is acquired in an unauthorized manner; 2) the
> chattel is removed from one place to another with the
> intent to exercise control over it; 3) possession of the
> chattel is transferred without authority; 4) possession
> is withheld from the owner or possessor; 5) the chattel
> is altered or destroyed; 6) the chattel is used
> improperly; or 7) ownership is asserted over the chattel.

*Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853,
857 (La. 1998); *accord MCI Commc'ns Servs., Inc. v. Hagan*, 74 So.
3d 1148, 1154 n.8 (La. 2011). Under Louisiana law, a "moveable"
is classified as either corporeal or incorporeal. "Corporeal
movables are things, whether animate or inanimate, that normally

---

[16]　　R. Doc. 1 at 3.

move or can be moved from one place to another." La. Civ. Code art. 471. "Rights, obligations, and actions that apply to a movable thing are incorporeal movables. Movables of this kind are such as bonds, annuities, and interests or shares in entities possessing juridical personality." La. Civ. Code. art. 473. "All things, corporeal or incorporeal, that the law does not consider as immovables, are movables." La. Civ. Code art. 475. Thus, in Louisiana, "the category of movables is residual," meaning that "anything not classified as immovable is movable." 24 Diane Tooley-Knoblett & David Gruning, *Louisiana Civil Law Treatise, Sales* § 6:5 (2013). The category of immovables is limited, including only "tracts of land, buildings, . . . standing timber[,] . . . [and] anything that is a component part of an immovable." *Id.* (citations omitted).

The Court's research has uncovered no Louisiana case addressing the issue of whether a satellite signal is a "movable" subject to conversion under Louisiana law. Thus, the Court must make an "*Erie* guess" as to how the Louisiana Supreme Court would rule on the question. *See Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546-47 (5th Cir. 2004).

Several considerations compel the conclusion that the Louisiana Supreme Court would find a satellite signal to be a movable. First, a satellite signal is certainly not an "immovable" as that term is defined in the Civil Code, *see* La. Civ. Code arts. 462-470; Tooley-Knoblett & Gruning, *supra*, § 6:5,

9

and so it automatically falls into the residual category of movables. *See* La. Civ. Code art. 475. Second, a satellite signal is certainly capable of moving from one place to another; indeed, its very *purpose* is to move and carry information over distance. *Cf.* La. Civ. Code art. 471. Third, a satellite signal is not an abstraction. It is a physical thing, composed of matter, with physical properties. Finally, a satellite signal can be the subject of a commercial transaction, as it was in this case. *Cf.* La. Civ. Code art. 473.

Accordingly, plaintiff's allegation that defendants intercepted its satellite signal without authorization is sufficient to state a claim for conversion under Louisiana law. *Cf. Trenchard*, 2014 WL 854537, at *5 (holding that a similar complaint filed by Joe Hand "state[d] a claim for conversion, because Joe Hand possessed distribution rights in the [broadcast,] and by intercepting the [broadcast] without authorization, the defendants exercised a right of ownership over property belonging to Joe Hand"). *But cf. DIRECTV, Inc. v. Ostrowski*, 334 F. Supp. 2d 1058, 1062-63 (N.D. Ill. 2004) (noting that there is a split of authority on this issue in Illinois and collecting cases). *See generally* Val D. Ricks, *The Conversion of Intangible Property: Bursting the Ancient Trover Bottle With New Wine*, 1991 B.Y.U. L. Rev. 1681, 1701-02 & nn. 67-74 (1991) (collecting cases).

### C.   Damages

"A default judgment is a judgment on the merits that
conclusively establishes the defendant's liability." *U.S. For Use
of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014
(5th Cir. 1987). A default judgment does not, however, establish
the amount of damages that the Court will award. *Id.* ("After a
default judgment, the plaintiff's well-pleaded factual
allegations are taken as true, except regarding damages.").

Although plaintiff has adequately pled causes of action
under section 553, section 605, and the common law of conversion,
the Court will award damages under only one of these theories.
*See J&J Sports Prods., Inc. v. Jimenez*, No. 5:11-cv-130, 2014 WL
793142, at *4 (W.D.N.C. Feb. 26, 2014); *After Six Prods.*, 2014 WL
644400, at *4 ("While [plaintiff] has shown violations under both
statutes, courts have precluded double recovery." (citing *Vt.
Microsystems v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir. 1998);
*Sperry Rand Corp. v. A-T-O, Inc.*, 447 F.2d 1387, 1392-93 (4th
Cir. 1971))). Plaintiff has elected to seek statutory damages
under section 605.[17]

Section 605 provides that an aggrieved party can recover an
award of statutory damages of between $1,000 and $10,000 for each
violation. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Moreover, "[i]n
any case in which the Court finds that the violation was

---

[17]   R. Doc. 14-1 at 6.

committed willfully and for purposes of direct or indirect
commercial advantage or private financial gain," the court can
increase the damages award by up to $100,000 per violation. 47
U.S.C. § 605(e)(3)(C)(ii). Finally, a prevailing plaintiff is
entitled to "full costs, including . . . reasonable attorneys'
fees." 47 U.S.C. § 605(e)(3)(B)(iii). Here, plaintiff seeks
$10,000 in statutory damages, $50,000 in enhanced damages, $1500
in attorneys' fees, and $800 in costs, for a total of $62,300.

  1.   *Statutory Damages*

Courts have employed different methods for calculating
statutory damages for violations of section 605. *See Bonvillain*,
2013 WL 5935208, at *2 (discussing different approaches). Some
courts have simply held the defendants liable for a flat sum;
others have calculated damages "based on the number of patrons in
the establishment at the time of the violation"; and still others
have imposed "the cost of the appropriate licensing fee
proportional to the size of the business had the business legally
aired the program." *Id.* "Each of these methods provides a
different approach to determining a 'just' amount." *Id.* In the
final analysis, courts are to award an amount of damages that
"balance[s] the financial harm suffered by the plaintiff with the
financial burden on the defendants of a hefty damages award," and
also takes into account the deterrent purposes of the statute.
*Trenchard*, 2014 WL 854537, at *3.

Here, the license fee for a business with a capacity of 250 (the approximate size of Wherehouse) would have been $1600. The Court finds that a flat penalty of three times the license fee, or $4800, is a just amount under the circumstances, and is comparable with awards in similar cases. *See After Six Prods.*, 2014 WL 644400, at *4 (collecting cases); *Bonvillain*, 2013 WL 5935208, at *2 (finding award of approximately twice the license fee to be a "just amount under the circumstances"); *Wing Bistro*, 2013 WL 6834645, at *7 (awarding statutory damages of four times the license fee). Imposing a penalty of a multiple of the licensing fee is necessary to deter violations of section 605, because not all violators are caught, and because "[t]here would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Bonvillain*, 2013 WL 5935208, at *2 (quoting *Entm't by J&J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002)); *see also* Louis Kaplow, *An Economic Approach to Price-Fixing*, 77 Antitrust L.J. 343, 418 (2011) (noting "[t]he general principle" that "fines or damages . . . should equal external harm times a probability multiplier, in the simplest case equal to one divided by the probability that sanctions will be imposed").

   *2.   Enhanced Damages*

Joe Hand also requests an award of enhanced damages, arguing that defendants' actions in intercepting the broadcast were

13

willful and for the purpose of commercial gain. The Court is

persuaded by this contention and holds that an award of enhanced

damages is warranted in this case. According to plaintiff's

affidavit, cable "programming . . . cannot be mistakenly,

innocently, or accidentally intercepted."[18] Courts have found

this argument persuasive, noting that "signals do not descramble

spontaneously, nor do television sets connect themselves to cable

distribution systems." *E.g.*, *Time Warner Cable v. Googies*

*Lucheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999); *see*

*also After Six Prods.*, 2014 WL 644400, at *5; *Wing Bistro*, 2013

WL 683465, at *7-8; *Trenchard*, 2014 WL 854537, at *4. Moreover,

defendants clearly intercepted the broadcast for the purpose of

commercial gain. They displayed a pay-per-view UFC event without

authorization with the hope of enjoying the resulting increase in

business without sustaining the incident costs. *See, e.g.*,

*Trenchard*, 2014 WL 854537, at *4 (defendant business's violation

of section 605 "appear[ed] to have been committed for 'commercial

advantage,' because pay-per-view events can be expected to draw

in customers and enhance a restaurant's profits").

Courts consider several factors in determining the amount of

enhanced damages to award under section 605. These include

> (1) whether the defendant engaged in repeated violations
> over an extended period of time; (2) whether the
> defendant realized substantial unlawful monetary gains;
> (3) whether the defendant advertised the broadcast; (4)

---

[18]   R> Doc. 14-8 at 3.

whether an admission fee or food or drink premium was
charged; and (5) whether the plaintiff suffered
significant actual damages.

*Trenchard*, 2014 WL 854537, at *4; *accord After Six Prods.*, 2014
WL 644400, at *5; *Wing Bistro*, 2013 WL 683465, at *8.

Here, there is no evidence that Ashby is a repeat violator,
that Wherehouse advertised the broadcast, or that Wherehouse
charged a cover fee or a food or drink premium. There is also no
concrete evidence regarding the amount of unlawful monetary gain
Ashby enjoyed as a result of the violation, or the amount of loss
Joe Hand suffered. In light of the absence of evidence of
aggravating factors, the Court concludes that Joe Hand's request
of $50,000 in enhanced damages is excessive. Twice the amount of
statutory damages, or $9600, is appropriate. *See Trenchard*, 2014
WL 854537, at *4; *Bonvillain*, 2013 WL 5935208, at *3. This award
of enhanced damages adequately takes into account the willfulness
of the violation and will serve to deter violations of the law.

3.    *Costs and Attorneys' Fees*

Under 47 U.S.C. § 605(e)(3)(b)(iii), the Court is required
to "direct the recovery of full costs, including . . . reasonable
attorneys' fees to an aggrieved party who prevails" in an action
under section 605. Plaintiff has submitted the affidavit of its
counsel, John C. Henry, as evidence of the attorneys' fees and
costs it has incurred in this litigation. Henry avers that his
firm expended at least six hours on this litigation, at a rate of

$250 per hour.[19] The Court finds this hourly rate and number of hours to be reasonable. *Cf. After Six Prods.*, 2014 WL 644400, at *5; *Wing Bistro*, 2013 WL 6834645, at *9-10. Henry also states that Joe Hand "incurred costs of $400.00 to file and $400.00 to effectuate service in this action."[20] The Court finds the requested costs to be reasonable as well.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for a default judgment in part. Defendant Mark Ashby is adjudged liable to plaintiff Joe Hand for violations of 47 U.S.C. §§ 553 and 605 and for conversion. The Court awards the following damages to Joe Hand under section 605: $4800 in statutory damages, $9600 in enhanced damages, $1500 in attorneys' fees, and $800 in costs, for a total of $16,700.

New Orleans, Louisiana, this 2nd day of April, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[19]   R. Doc. 14-6 at 2.

[20]   *Id.*